**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Rose Ann Karam,

           Plaintiff,

v.

County of Pima, et al.,

           Defendants.

No. CV-21-00171-TUC-SHR

**Order Re: Defendants' Motion to Dismiss, Plaintiff's Motion for Leave to File Amended Complaint, and Plaintiff's Motions for Status Update**

Pending before the Court are Defendant Pima County's Motion to Dismiss (Doc. 18), Plaintiff Rose Karam's Motion for Leave to File Second Amended Complaint (Doc. 23), and Plaintiff's Motions for Status Update (Docs. 25, 27, 28). For the following reasons, Defendant's Motion to Dismiss is granted, Plaintiff's Motion to File Second Amended Complaint is granted in-part and denied in-part, and Plaintiff's Motions for Status Updates are denied as moot.

### I.     Background

Plaintiff filed her original Complaint in April 2021, alleging a civil rights claim against Pima County and four unnamed Pima County employees, pursuant to 42 U.S.C. § 1983, based on the alleged deprivation of her property during a security screening at the Pima County Consolidated Justice Court ("Justice Court") on January 4, 2021. (Doc. 1.) In August 2021, Defendant Pima County moved to dismiss Plaintiff's Complaint for failure to state a claim (Doc. 14). Pursuant to *Stratton v. Buck*, 697 F.3d 1004 (9th Cir. 2012), the

Court issued an Order notifying Plaintiff of her rights and responsibilities in responding to Defendant's motion to dismiss, and ordered Plaintiff to file a response within fourteen days of the Order (Doc. 15). Plaintiff did not file a response—instead, she filed her First Amended Complaint ("FAC"), in which she appears to have attempted to add a retaliation claim based on a Justice of the Peace at Justice Court dismissing Plaintiff's small-claims case in June 2021. (Doc. 16.) Defendant moved to dismiss the FAC for failure to state a claim (Doc. 18). In response, Plaintiff filed a "Motion for Contempt of Court Order Against Pima County" (Doc. 19), in which she asked this Court to hold Defendant in contempt for filing the Motion to Dismiss because Plaintiff misunderstood the screening process of pro se civil cases under 28 U.S.C. § 1915. The Court denied Plaintiff's motion (Doc. 20) and again notified her of her rights and responsibilities with respect to Defendant's Motion to Dismiss and ordered Plaintiff to file a response within fourteen days (Doc. 20). Plaintiff responded (Doc. 21) and Defendant replied (Doc. 22). Two days after Defendant replied, Plaintiff filed a motion requesting leave to file a second amended complaint and attached her proposed second amended complaint. (Doc. 23-1.)

## II.     Plaintiff's First Amended Complaint (Doc. 16)

Plaintiff alleges when she went through security on the first floor of the Justice Court on January 4, 2021, "two screeners pulled the contents out" of each of her bags, "removed an unusual number of items from [her] bags" and "secretly removed a date-book which was filled with legal documents." (Doc. 16 at 2.) When Plaintiff reached the second floor of the building, where she was attempting to file a document in a small-claims case, she noticed her "filing documents had been removed from her belongings," so she was unable to file whatever documents she intended to that day. (*Id.*) When Plaintiff returned to the first floor to retrieve her missing belongings, she "was verbally reprimanded by a security officer" and was told to either go back upstairs or leave the building. (*Id.* at 2-3.) Plaintiff alleges when she left the building, she "did not receive all of the media/storage devices removed from [her] bags," including several "storage devices containing evidence for current and future litigation," her datebook, and legal documents. (*Id.* at 3.) Plaintiff

alleges the four security screening officers involved in this "illegal transaction" were Pima County employees.  (*Id.*)  She further asserts, "[i]f four employees are involved in an illegal search and seizure, the practice is likely a policy (written or otherwise) of their employer," and, therefore, she argues, "Respondeat superior applies."  (*Id.*)  Plaintiff also alleges she was denied access to the security surveillance footage when she asked to review it a few days later.  (*Id.*)

Next, Plaintiff alleges Judge Erica Cornejo dismissed the small-claims case referenced above "without explanation or justification" on June 15, 2021, which Plaintiff alleges "is evidence of retaliation secondary to the litigation against Pima County."  (Doc. 16 at 3.)  Plaintiff alleges the filing of her original § 1983 complaint was a protected activity.  (*Id.* at 3.)  She goes on to allege that because Judge Cornejo dismissed Plaintiff's small-claims case "without explanation or justification twelve days after notification via Certified Mail of [this] legal action" twelve days after Pima County was served with the original complaint, the dismissal of the small-claims case constitutes an adverse action and a "causal connection [time] exists between the 'protected activity' and the adverse action." (*Id.* at 3-4.)  Although Plaintiff does not specifically allege any constitutional violations against Defendant, she vaguely refers to the Fourth and Fifth Amendment.  (*Id.*)  Plaintiff also lists the elements of retaliation.  (*Id.*)

As to damages, Plaintiff seeks:  (1) to have her "two 5 gigabyte external hard drives, USB drives, SD micro drives, [and] legal documents among other items" returned to her; (2) "financial reimbursement for the replacement of storage media, documents, and other items equaling a total of approximately $500"; (3) "$2,000,000 for current litigation compromised by theft of evidence"; (4) "$18,000,000 for damages related to compromising future litigation dependent on if evidence illegally seized has been returned unaltered"; (5) "$2,500 for losses secondary to the case dismissal secondary to retaliation"; and (6) punitive damages "for the retaliation and intent to deceive and the shocking nature of the illegal search and seizure and subsequent deprivation of property."  (Doc. 16 at 4-5.)

### III.    Defendant's Motion to Dismiss (Doc. 18)

Defendant has moved to dismiss Plaintiff's FAC for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 18 at 3.)  Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Under Rule 12(b)(6), a party may move to dismiss a claim for relief by asserting "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The complaint, however, must contain more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Twombly,* 550 U.S. at 555 (quoting 5 Fed. Prac. & Proc. Civ. § 1216 (3d ed.)).

The Court will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, the Court will not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see also Iqbal*, 556 U.S. at 679.  In addition, a court "cannot assume any facts necessary to [a plaintiff's] . . . claim that they have not alleged."  *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

1

A. <u>Plaintiff's Retaliation Claim</u>

2    As noted, Plaintiff appears to allege Judge Erica Cornejo, who is a Pima County

3    Justice of the Peace, retaliated against Plaintiff when she dismissed Plaintiff's small-claims

4    case, allegedly without explanation.  As Defendant correctly argues (Doc. 18 at 4), justices

5    of the peace are absolutely immune from suit for judicial acts, unless those acts are "done

6    in the clear absence of jurisdiction." *Gregory v. Thompson*, 500 F.2d 59, 62 (9th Cir. 1974);

7    *Gorenc v. Bean*, 996 F.2d 1224 (9th Cir. 1993) (absolute immunity includes justices of the

8    peace and presiding judge cannot be liable for any alleged violations of justice of peace

9    under respondeat superior theory).  Plaintiff has not alleged Judge Cornejo's dismissal of

10    her case was done in clear absence of jurisdiction.  Therefore, Judge Cornejo is immune

11    from Plaintiff's suit and Plaintiff has failed to state a claim upon which relief may be

12    granted.  *See* Fed. R. Civ. P. 12(b)(6); *see also Iqbal*, 556 U.S. at 678.  Accordingly, this

13    claim is dismissed with prejudice.

14

B. <u>Plaintiff's Civil Rights Claims under 42 U.S.C. § 1983</u>

15    Although Plaintiff vaguely mentions the Fourth and Fifth Amendment, it appears

16    she is attempting to allege Pima County is liable for violating her right to be free from

17    unreasonable searches and seizures, and her right to her property based on the actions of

18    the officers who screened her on January 4, 2021.  Defendant argues Plaintiff's FAC

19    "simply does not outline facts that would support municipal liability against Pima County"

20    under her § 1983 allegations.  (Doc. 18 at 4.)  Specifically, Defendant asserts Plaintiff's

21    FAC does not contain "the facts needed to give the Defendant fair notice and the ability to

22    defend itself against Plaintiff's ill-defined and unsupported allegations," as Plaintiff has

23    not identified the defendants she names as "Un-named Employee 1–4," has not identified

24    any specific municipal policy or custom or training deficiencies of the Justice Court that

25    caused the alleged constitutional violations, and has not identified "any incidents, outside

26    of her alleged date of incident on January 4, 2021, which would represent additional

27    instances of constitutional violations by Justice Court screeners." (*Id.* at 4-5.)  Defendant

28    further argues Plaintiff has failed to state a claim because she "fails to outline a causal link

between a custom and/or policy of the Justice Court and Plaintiff's allegations of constitutional violations." (*Id.* at 5.)

In her Response, Plaintiff begins by arguing the Motion should be denied because "Plaintiff's initial complaint has already passed the Court's 28 U.S.C. § 1915 screening which includes verifying that the Complaint states a claim upon which relief may be granted." (Doc. 21 at 1.) Plaintiff made this same argument in her motion for contempt (Doc. 19), which the Court denied on September 28, 2021 (Doc. 20). For the reasons set forth in the September 28 Order, Plaintiff's argument is without merit.

Next, Plaintiff cites to a variety of cases to argue pro se filings are to be construed liberally and argues she "provided significant detail in her pleadings to qualify the cause of action." (Doc. 21 at 5-6.) She asserts "[a]ll elements of for the cause of action were addressed even though they need not to be [sic] as Arizona is a notice pleading state." (*Id.* at 6.) As to her retaliation claim, she acknowledges justices of the peace are immune from liability, but goes on to assert: "I can sue [the Justice of the Peace's] employer for her participation in a retaliatory event." (*Id.* at 7.) Plaintiff also goes on to argue: "Defendant's Motion to Dismiss is baseless and filled with jurisdictionally irrelevant case law." (Doc. 21 at 1.) Specifically, Plaintiff asserts:

> In Defendant's Motion to Dismiss the Amended Complaint, [Defendant] cites two cases in the argument pertaining to vicarious liability; *City of Canton v. Harris*, 489 U.S. 387 (1989) and *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985). Neither of these are in the Ninth Circuit or provided for in the Ninth Circuit Section 1983 Outline. Hence, they have no relevance in these proceedings.

(*Id.*) Plaintiff is mistaken. The cases cited by Defendant are opinions rendered by the United States Supreme Court, which is the highest federal court in the country. In other words, United States Supreme Court cases addressing federal claims—such as those brought under § 1983—are binding on all federal courts, including the Ninth Circuit and this Court. Plaintiff's argument, therefore, is meritless.

As to Plaintiff's contention that she has provided sufficient detail to state a claim, the Court disagrees. As explained above, Plaintiff appears to allege Pima County is liable

because the alleged constitutional violations occurred due to Pima County's custom or policy. That is, Plaintiff is alleging a theory of municipal liability. In *Monell v. Dep't of Social Services of City of New York*, the Supreme Court explained: "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." 436 U.S. 658, 694 (1978). Rather, a local government may only be liable when "execution of a government's policy or custom . . . inflicts the injury." *Id.* Therefore, to state a claim, Plaintiff must sufficiently allege the execution of a Pima County policy or custom inflicted the constitutional violations she allegedly suffered.

A policy is "a deliberate choice to follow a course of action" made by the officials or entity "responsible for establishing final policy with respect to the subject matter in question." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). A policy can be one of action or inaction. *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). A "custom" for purposes of *Monell* liability is a "widespread practice that, although not authorized by written law or express . . . policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). While one or two incidents are insufficient to establish a custom or practice, the Ninth Circuit has not established what number of similar incidents would be sufficient to constitute a custom or policy. *See Oyenik v. Corizon Health Inc.*, 696 Fed.Appx. 792, 794-95 (9th Cir. 2017) (a reasonable jury could conclude at least a dozen instances of defendant Corizon denying or delaying consultations and radiation treatment for cancer patient over a year amount to custom or practice of deliberate indifference (citing *Oviatt*, 954 F.2d at 1478)). Whether actions by entity officers or employees amount to a custom "depends on such factors as how longstanding the practice is, the number and percentage of officials engaged in the practice, and the gravity of the conduct." *Mi Pueblo San Jose, Inc. v. City of Oakland*, C-06-4094 VRW, 2006 WL 2850016, at *4 (N.D. Cal. Oct. 4, 2006).

Plaintiff has not alleged a choice was made by the officials or entity responsible for establishing security screening procedures, nor has she identified any policy of Pima County's relating to the incident at issue.  Further, Plaintiff has identified only one incident during which she was subject to alleged constitutional violations:  the search and seizure of her belongings on January 4, 2021.  As noted, one incident is insufficient to establish a custom or practice.  Therefore, Plaintiff has failed to state a claim against Pima County under § 1983.  *See* Fed. R. Civ. P. 12(b)(6); *see also Iqbal*, 556 U.S. at 678.

## IV.    Plaintiff's Motion for Leave to File Second Amended Complaint

On October 21, 2021, Plaintiff filed a motion for leave to amend her FAC.  (Doc. 23.)  Plaintiff asserts she "experienced additional violations of her Fourth and Fifth Amendment Rights by other employees at a second installment of Pima County which exactly models the experience at the Pima County Consolidated Justice Court."  She also alleges she "has experienced additional retaliation involving Pima County and its employees," and therefore requests leave to file what would be her second amended complaint so she can "include this new, pertinent evidence to the record [sic]."  Plaintiff argues amendment should be permitted because Federal Rule of Civil Procedure 15(a)(2) "states that an amendment should be freely allowed 'when justice so requires.'"

In her proposed second amended complaint (Doc. 23-1), Plaintiff seeks to add allegations arising from two additional incidents.  First, she alleges her constitutional rights were violated on September 13, 2021 when three unnamed screeners/security officers removed an external hard drive from her bag when she went through security at the Pima County Juvenile Court, and did not return it to her.  (*Id.* at 4.)  Plaintiff argues this incident "constitutes a second episode where Pima County employees participated in an illegal search and seizure of [her] belongings," and alleges this practice "is likely a policy or custom" of Pima County.  (*Id.*)  Second, Plaintiff alleges she was retaliated against when the Pima County Action Agency/One Stop Program denied her utility assistance to which she believes she is entitled.  (*Id.* at 5-7.)  Specifically, Plaintiff alleges she "was entitled to past due amounts [of utility bills] as well as one (1) year of ongoing utility assistance (gas

- 8 -

and electricity) as consistent with the [Low Income Home Energy Assistance Program][1] as well as for water per local assistance protocol," but she "actually received one (1) year of gas assistance, about six (6) months of electrical assistance, and no water utility assistance." (Doc. 23-1 at 7.)  Plaintiff asserts Pima County "was notified via Certified Mail of the filed action on 06/03/2021," which she alleges is a "protected activity," and an agency of Pima County retaliated against her when it "did not provide all the benefits [she] was entitled to, which she alleges was an adverse action she suffered "less than two months from notification of said legal action." (*Id.* at 7-8.)

Under Rule 15(a)(2), when a party seeks to amend its pleading more than twenty-one days after serving it, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  And, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

Plaintiff's proposed § 1983 claim based on the alleged September 13, 2021 incident fails to state a claim for the same reasons as her allegations relating to the January 4, 2021, incident in her FAC.  *See Iqbal*, 556 U.S. at 678.  As explained above, two incidents are insufficient to establish a custom or practice for *Monell* liability.  *See Oyenik*, 696 Fed.Appx. at 794-95.

As to Plaintiff's alleged retaliation claim relating to her application for utility assistance, Plaintiff has not identified any legal basis for this claim.  Plaintiff merely recites

---

[1]According to the United States Department of Health and Human Services website, the Low Income Home Energy Assistance Program ("LIHEAP") provides "federally funded assistance in managing costs associated with home energy bills, energy crises, weatherization and energy-related minor home repairs."  U.S. DEP'T HEALTH & HUMAN SERVS. OFFICE OF CMTY. SERVS., *Low Income Home Energy Assistance Program (LIHEAP)*, https://www.acf.hhs.gov/ocs/low-income-home-energy-assistance-program-liheap (last visited: February 24, 2022).

the elements of retaliation and cites three cases, but does not explain how those cases apply to her claims, or what law was allegedly violated. Indeed, all three cases Plaintiff cites are employment cases involving alleged violations of Title VII or the Americans with Disability Act, which have no application to her claim here. Therefore, Plaintiff has failed to state a claim upon which relief may be granted. *See Iqbal*, 556 U.S. at 678.

## V.    Leave to Amend

Within 30 days, Plaintiff may submit a second amended complaint to cure the deficiencies outlined above for her § 1983 claims for unreasonable search and seizure and her retaliation claim against Pima County for the denial of utility assistance. For the reasons state above, due to immunity, Plaintiff cannot state a claim against a judicial officer when the judicial officer is immune from suit.

Plaintiff must clearly designate the document as the "Second Amended Complaint." In drafting the Second Amended Complaint, Plaintiff must include sufficient factual details so this Court can determine each claim existing against each Defendant. Plaintiff must refer by name to particular Defendants, whenever possible, in the body of the Second Amended Complaint, so it is possible to determine which Defendant is being charged with responsibility for each particular grievance. *Jackson v. Nelson*, 405 F.2d 872, 873 (9th Cir. 1968).

Plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At the pleading stage, the Plaintiff must allege enough facts, if taken as true, to suggest a claim exists. *Id.* at 555-556. This does not impose a probability requirement at the pleading stage, it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to support the claim. *Id.* at 555. "[F]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Id.*

A second amended complaint supersedes the first amended complaint and the original complaint. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach*

*Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).  After amendment, the Court will treat the First Amended Complaint as nonexistent.  *Ferdik*, 963 F.2d at 1262.  Any cause of action raised in the First Amended Complaint and dismissed without prejudice is waived if it is not alleged in a second amended complaint.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

### VI.   Motions for Status Update

Plaintiff has filed three motions for status update on Defendant's Motion to Dismiss and her Motion for Leave to File Second Amended Complaint (Docs. 25, 27, 28).  Plaintiff appears to read Appendix A to the Local Rules of Civil Procedure as requiring the Court to resolve motions within the "Court Review Time" period listed in the Appendix.  The Appendix to the Local Rules is a table of additional matter which does not create a rule of the Court.  If the Appendix created rules, it would not need to cite to them, and the rules cited in the Appendix do not establish a limitation on the time for a Court ruling.  *See* Fed. R. Crim P. 6; Fed. R. Civ. P. 6; LRCiv 7.2, 7.3, 12.1, 56.1.  In addition, the Local Rules contemplate motions pending longer than fourteen days as Local Rule 7.2(n) permits a litigant to inquire as to the status of a motion that has been pending longer than six months.  Given the resolution of Defendants' Motion to Dismiss and Plaintiff's Motion for Leave to File Second Amended Complaint, Plaintiff's motions for status update are denied as moot.

**IT IS ORDERED:**

(1)     Defendants' Motion to Dismiss (Doc. 18) is **GRANTED** and Plaintiff's First Amended Complaint (Doc. 16) is **DISMISSED** for failure to state a claim.

(2)     Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 23) is **DENIED in-part,** to the extent that her proposed second amended complaint attached at Doc. 23-1 fails to state a claim and shall not be filed as a second amended complaint, and **GRANTED in-part,** to the extent that Plaintiff is granted leave to file a second amended complaint in compliance with this Order within 30 days of the date of this Order.

. . . .

. . . .

(3)     If Plaintiff fails to file an amended complaint within 30 days, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action with prejudice.

(4)     Plaintiff's Motions for Status Update (Docs. 25, 27, 28) are **DENIED** as moot.

Dated this 3rd day of March, 2022.

Honorable Scott H. Rash
United States District Judge